Your Honor, this is the first case of the morning. Call 210-831-8 in the state of Illinois v. Joseph E. Puckett. On behalf of the Admirals, Mr. Paul Rogers. On behalf of the people, Mr. Scott Jacobson. Are both sides ready to proceed? Yes. I think, Counsel, you may proceed when you're ready. Thank you. Good morning. May it please the Court, Counsel. The question in this case, Your Honors, is whether a father can be said to have committed an act of harassment, and therefore an act of domestic violence, simply because, in the absence of any court order prohibiting him from doing so, he informed the child's mother that he intended to take their newborn child to a particular place at a particular time. Well, does that particular time mean something? The particular time is 8.30 at night. At night? Yes. Okay, and he wanted to go to the city. I've got to assume that's Chicago. But we don't know that. I think there actually was testimony that it was Chicago. Well, 8.30 at night, one-month-old baby, that's a little unusual, isn't it? I don't know whether that's unusual or not. The definition of harassment here that we're talking about, in which the Court found, well, domestic violence includes abuse. Abuse includes harassment. Harassment has four elements. Knowing conduct, not necessary to achieve a purpose that's reasonable under the circumstances, conduct that is likely to cause a reasonable person to experience emotional distress, and conduct that actually does cause emotional distress. We're not contesting either the first or the last of those. It's the two in the middle that we're talking about here. Did Mr. Puckett engage in any conduct that was not necessary to accomplish a purpose that was reasonable under the circumstances? And was Ms. Gail's reaction something that you would expect a reasonable person to have under the circumstances? And to be more specific about it, the question is whether the State proved those elements at the trial. Now, in a way, this is a reasonable doubt case. That's how it's been framed. And we're talking about the sufficiency of the evidence. But this, as I hope I make clear in the brief, and I'll try to make clear today, too, this is not your typical reasonable doubt case. We are not sorting out, or I'm not asking this Court to sort out conflicting testimony or rebalance the evidence or decide between competing versions of what happened. We're really talking about whether the determination made by the trier of fact, which in this case was the trial court, whether the conduct that the trier of fact identified as harassment, and therefore a type of domestic violence, falls under the statutory definition of that term. So this is really a statutory construction question in the guise of a reasonable doubt argument. Now, having said that, I want to make something clear, and that is that the standard of review that applies to reasonable doubt cases would still apply here. And that is a standard that requires deference to the trial court's findings of fact, and it also allows for reasonable inferences to be drawn from what the evidence proves. The Court has to defer to the trial court's findings in that respect. But it's important not to conflate the trial court's findings of fact with evidence. The findings of fact are the equivalent of a special verdict from a jury. We know specifically what conduct this trial court, this finder of fact, determined to count as harassment. This Court has a duty to consider whether that finding is based on the evidence or whether it was based on a gloss that the trial court was putting on the evidence that is not supported by the evidence. If the evidence does show a purpose for the trip, is there sufficient evidence to indicate that a reasonable person should react or not react in a different way? Because all we know is 8.45 p.m. to Chicago. Right. If he had a purpose to see his mother, who one wanted to see the baby, the baby's on a milk bottle, the weather's good, a reasonable person wouldn't necessarily do what the victim did in this case. They would argue. That's our position, Your Honor. And that's one of the ways of looking at the case that I think is helpful, is that the act of harassment that the trial court found, and you can look at the findings of fact on, I think it's pages 78 through 80 of the record, support this. The act of harassment, therefore the act of domestic violence that the trial court identified here was the mere act of Mr. Puckett saying to the mother of the child, Ms. Gales, I want to take the baby, whose name was also Joseph, to Chicago, to the city. We know that the couple had an on-off relationship for about five years. We know that the baby was their baby, and it was about a month old. We know that they were not living together at the time. We know it was around 8.30, 8.45 p.m., as you say. We know that there was no order either allowing him to do this or requiring him to do this, or there was no order prohibiting him from doing this, but that's an unknown. We know that he did not schedule the visit, the trip in advance with Ms. Gales. We know that Mr. Puckett took possession of the baby, picked up the baby and held the baby. We know that Ms. Gales did not want him to take the baby to Chicago, but he said that's what he wanted to do. And at some point during this exchange about whether he was going to do that or not, she went to call 911. She attempted to grab the baby back from him, but you pretty much have to stop the film at that point at which he said, I want to take the baby to Chicago. There's no evidence that he used any vulgar language, that he spoke loudly, that he called their names, that he did anything inappropriate, really, except as a father come and say, I would like to take my son to Chicago. There's no statement of purpose. There's no indication that he was allowed to even explain what he was up to. We don't know. This is what we don't know. We don't know how long he planned to have the baby absent from the home. Obviously, if you're going to go from DeKalb to Chicago, spend some time in Chicago and come back, we're probably talking about a minimum of three hours, but beyond that, we don't know. We don't really even know the means of transportation that he was going to use. We don't know if anybody else was going to accompany the baby and Mr. Puckett. We don't know what supplies he had. We do know there was a car seat that was provided there at the apartment where Ms. Gales lived. We don't know if anybody was going with him. We don't know the condition of the baby at the time. Did the baby have fever, was sick in any way, or was otherwise a perfectly healthy baby? We don't know why Mr. Puckett wanted to take the child to Chicago. We can guess there's thousands of reasons why he might have wanted to do that. We don't know what part of Chicago he wanted to go to. And probably most importantly, we don't know why Ms. Gales was upset. We don't know why she didn't want him to take it. There's no testimony from her. There's only two witnesses, Ms. Gales and Mr. Puckett. There's nothing in the record that says, that indicates that she said, I don't want you to take baby Joseph to Chicago right now because, she just said, I did not want him to take the baby at that time, period. And she reacted by trying to grab the baby back, and either shortly thereafter or simultaneously with saying that and trying to grab the baby back, got her cell phone, started counting, dial 9-1-1. Well, don't we have some indication of what maybe she was thinking, if nothing else, when she says she wanted to get some parenting issues straight or something of that nature? Well, that's something that happened after he made the mere statement, and that's when she was blocking the door to keep him from exiting, after he had put the baby down in the car seat. Basically, contrary to the trial court's finding, the trial court used words like stubborn and insistent and persistent, words like that to describe Mr. Puckett's conduct. In fact, the trial court said that Mr. Puckett said that essentially he defied Ms. Gales' wishes and said, I'm going to take the baby to Chicago anyway. There's no evidence that he said any such thing. There's no evidence that he was stubborn. The evidence, like I said, is the contrary. As soon as he realized that Ms. Gales was so upset about him just saying he wanted to take the baby to Chicago that she decided to call 9-1-1, which was a tactic she had employed in the past, and he didn't know if she was really going to call 9-1-1, whether she was going to call the police and report this or not, she admitted that she had used that as a tactic in the past. Once he realized she's reacting so strongly here that she thinks that she needs to call the police, I'm out of here. I'm going to put the baby down in the car seat, and I'm headed for the door. She blocks the door. She says one of the reasons she blocks the door is she wants to get these parenting issues straightened out. Didn't she also say she wanted her key back? Exactly. She did say that, so that was not her sole motivation. Also, we're talking about this is after the act of harassment supposedly occurred. Now, yes, I guess you can infer that maybe that's why she didn't want to go, but that doesn't make – first of all, we still don't know what his purpose was. So his purpose may have been reasonable under the circumstances. And her reaction, depending on what his purpose – without knowing his purpose, it's very difficult to say whether her reaction was reasonable or not. She basically assumed, or we don't know, we'd have to fill in the gaps by saying, well, gee, it must have been. She must have thought it was for some bad purpose. All right. What was the insulting and provoking domestic battery charge? That charge was based on conduct that occurred after the phone call and after the call was disrupted. That's when she fell toward the edge closet. She went to the door to block the exit door. He pushed her aside. She made contact with the closet door. The closet door came off the hinges. So what, if any, impact does a finding of not guilty on that charge have as to this charge of preventing reporting of domestic violence? Well, I don't think it really says much one way or the other. It certainly doesn't – it's not dispositive. I mean, the acquittal on that does not mean that he has to be acquitted on this charge. But by the same token, it doesn't really tell us very much about whether his mere statement – and really, I submit this is really a legal question – whether the mere statement, I would like to take my son to Chicago now, is harassment as that's defined. And I think it's important that we consider that this is strictly verbal conduct. And I didn't really argue it this way and make the point that the statute's overbroad or that I didn't specifically talk about First Amendment concerns, but we are talking about verbal conduct here. And so I think when you construe the statute, if you apply – if you count this as harassment, a mere statement, I would like to take my son to Chicago now, that has some First Amendment implications. But we also construe the statement, I'm taking the baby to Chicago now, because we don't know his intonation or how it was presented. Failure to say, to see my mother or to visit my aunt, isn't that in the nature of harassment? I would disagree with that, Your Honor. I think you cannot assume that he used any particular intonation. No, my point is, I mean, with all due respect to your argument, you're portraying he's very calm and quiet and I would please like to take the baby now. My point is just to say I want to take the baby now without saying to the mother of a newborn to visit my mother or to go visit my aunt. Isn't that the nature of harassment? Isn't that the nature of a statement, his failure to say, this is why I'm taking the baby? Doesn't that make it unreasonable and therefore qualify as harassment? No, I disagree with that. I think that's because that's essentially shifting the burden onto the defense to prove that he was – the state had to prove harassment, which meant they had to prove that his conduct was unnecessary for a purpose that's reasonable under the circumstances. He didn't have to testify at all. No, not at trial, that he didn't say it at the time to the mother of the child. In other words, he says, I'm taking the baby now. It's 8.30 at night. It's a newborn. As opposed to saying to the mother, I want to take the baby to visit my mother. Much more reasonable. Rather than saying to the mother, I'm taking the baby to Chicago. It's 8.30. We're in DeKalb. The city is a ways away. That's my point. Well, I understand your point. I didn't mean at trial. I meant at the time of the event. At the time of the event, he did not make a statement of purpose. That's true. However, we also don't know why he didn't do that. Maybe because as soon as he said that, she reacted the way she did. Maybe, maybe, maybe. Well, that's exactly right. I don't think we can base a criminal conviction on maybes and on guesswork. Like I said, I think that's what the trial court's error was, is putting a gloss on the evidence. That's certainly one interpretation. But there's other possible interpretations that are just as consistent with the evidence as that interpretation. And, in fact, I would say more consistent with the evidence than saying that he used any particular intonation. Or just the mere fact that he omitted it. We don't really even have time to say his purpose. And I'm not really sure that he's being required to inform her of the purpose at the time. It's just that in order to find it to be harassment, it has to be his action, in other words his statement, has to be for a purpose that's unreasonable under the circumstances. It doesn't say he has to tell her what his purpose is. That may come into whether her reaction is reasonable or not, but without any proof of what the purpose is, there's no evidence that she even asks him, wait a minute, why are you going? Under this action, what type of, what degree of emotional distress is required? Just a loud voice, don't do that. What degree of distress? Yeah, what degree of distress is required for conviction under the statute? Because it's necessary to prove emotional distress. Right. And I think that the subjective feelings that she had would count as distress for purposes of the statute. So any feeling? Not any feeling. But she said she's afraid, she's had some. What's the feeling that you need to prove emotional distress? Pardon? What's the degree of feeling that's necessary to prove emotional distress under the statute? And what was the intent of the legislature with respect to using that word, emotional distress? Well, loud voice. You have to cry. That was an issue that was discussed in the Carderon case, which I expect the State will talk more about. That was a witness harassment case, and that involved the question of whether the degree of, whether the quantity of distress or the quality of distress felt by the victim had to be akin to being, feeling threatened either personally or if it was property-wise. And the Illinois Supreme Court said no. That was a case where the woman got pulled over for the DUI and so forth. And she said, well, I was just nervous. I got pulled over by the police. I was upset. And the Carderon court said even though she didn't feel like she was being personally threatened or that there was any threat to her property, that counted as distress. So that's why I would, Justice Bowman, I would answer your question by saying that when she says she was upset and Ms. Gale said she was upset, she was agitated, she was angry, if that's reasonable, I would concede that that counts as, that gets over the threshold of distress that you would need for the statute. But the question here is the reasonableness, whether the State proved those two elements that I talked about, whether his statement was made for a purpose that was necessary or reasonable under the circumstances and whether her reaction was reasonable. If it was reasonable, then I'm not arguing that she didn't suffer distress. So I hope that answers your question. I have one last. The incident occurred, allegedly occurred March 29th, 2009 or 27th? 27th. The complaint simply says committed the act of domestic violence and, you know, was there any discussion in court about what is domestic violence before this trial started? Was there any motion? Was there any contest to the complaint? No, not that I recall, Your Honor. There was not. And then six months later, there is a domestic battery filed, correct? Yes. Who first brought up the concept of domestic violence equals harassment? Was that the judge himself? Was that the State? Well, my recollection was that that came out in the closing arguments and then in the trial court's discussion of his finding of fact and elaboration as to why he came to the result that he did. But it was always alleged that he committed an act of domestic violence and under this particular statute it refers you to another statute where that's defined. And so I think that was taken as a given that that's what had to be shown, was that there was harassment or some other kind of domestic violence. Well, there were other kinds of domestic violence defined. But in this case, there was never any question that, and what the trial court found was that the only act of domestic violence here was harassment and specifically the making of the State. So if there are no further questions, thanks. Do you wish to reply? Good morning, Your Honor. May it please the Court. With all due respect to counsel, this was not the quiet, muted exchange prior to the 911 call that counsel would have, you believe. The record evidence amply showed that the defendant picked up his one-month-old son and then proceeded to engage in a struggle with the victim with his free hand. Thus, while he's holding his one-month-old son, he's having a struggle with the victim with his free hand. I'm afraid what you're describing is the defendant enters the apartment, picks up his son, and then starts to struggle with the mother. I believe he comes in and says, he comes into the apartment, he says, I believe he says, I'm taking the baby to the city. This is the victim's testimony. I'm taking the baby to the city. And then she fills in later on that by the city he meant Chicago. He comes in, he says, I'm taking the baby to the city. He reaches for the baby. I'm sorry, he picks up the baby, Joseph Jr. Did she give him the baby? I don't know. Isn't there some testimony that she did? I don't believe so at that point. Okay. I actually, to be honest with you, I don't recall any testimony about her giving the baby. I do recall that after he had picked the baby up, she reaches for the baby, and then he proceeds to sort of fight her away with his free hand. Then she picks up the phone, calls 911, because she put it she didn't want to get into a confrontation. And she plainly didn't want a defendant to take her son to Chicago. Now, I don't know what other words were used. I wasn't there. Certainly neither was the trial court. But the victim was, and she testified at trial. And apparently, to the extent of her emotional distress, that was apparently on display at the trial, because the trial court said clearly she was emotionally distressed. I saw it in her testimony. And what mother of a one-month-old child wouldn't be distressed under these circumstances? It wasn't just inference. That was the demeanor of the witness that the trial court observed. So, I mean, with all due respect, there's evidence in the record of the victim's emotional distress. There's evidence in the record that there was some type of a confrontation or some type of, I don't want to call it a struggle, but at least a confrontation before the 911 call occurred. I would submit to you that that is per se harassment. You know, then after the 911 call occurs, I mean, it's not as though the defendant is disputing whether or not he interfered with the 911 call. He freely concedes that point. And then freely concedes that he had knowledge of the 911 call. Well, what was his actual act of interfering? Because isn't there some question about how the call was terminated? She testified that he may have reached for the phone, wanted, you better not be on the phone with the police, and he thinks or he best recollects that the phone may have fallen during their little scuffle. Correct. I believe Gail's testimony was that he grabbed the phone out of her hands, and then, like you said, he says that either I dropped the phone, and then if you listen to the 911 tape, he clearly says, you better not be on the phone, and then the line goes dead. I would submit to you, you know, the trial court clearly opted for Gail's testimony and the 911 tape and said that the 911 tape corroborated Gail's testimony. To a certain extent, I would say that that's a credibility finding on the defendant's testimony. But at the very same time that this is going on, the domestic battery is up, so to speak, and the judge finds him not guilty of domestic battery because he said it wasn't really a scuffle or it wasn't a real abuse. It wasn't insulting and provoking or something of that nature. I, you know, I really, I mean, even the defendant is willing to concede this. I really can't say that the later in time that domestic battery charge has anything to do with whether or not the state sufficiently proved the elements of this particular crime. Well, where in the complaint, as it's constituted, do we know the timing of these events? Where in the complaint? In the complaint for the interfering with reporting an act of domestic violence. I wouldn't say in the complaint. I would, I mean, the unlawful interference statute says, I believe it says after an act of domestic violence has occurred, when the witness or when the victim is attempting to report it. That's the only time-based language is in the unlawful interference statute itself. I think if a criminal defendant were receiving these two charges at the same time under these circumstances, I don't know, as you indicated before, maybe filing a bill of particulars perhaps might not be a bad idea. But regardless, I really don't know what to tell you. I mean, the charges fell the way they fell. It was very open-ended. Defendant chose not to contest them. He went to trial. The evidence showed what it showed, and the trial court found what it found. You know, I don't really know any other way to say it. What do you believe the conduct was that constituted domestic violence? The conduct that constituted domestic violence? In terms of the report? Was it picking up the baby or was it worse? I think it's the entirety of the transaction. I don't believe we should separate it out. I think it's the entire transaction prior to the 911 call. So he came to the building with the knowledge that when he picked up that baby and said, I want to take the baby to Chicago, that he intended to harass her. I don't know that that — That's what you have to prove. No, it's not that he intended to harass her when he arrived in the building. Let me make the word intent. It's not an intent statute. But he has to know that by coming in and doing what he did, quote, picking up the baby and telling the wife or the mother that he wanted to take the baby to the city, he knew that would constitute harassing. I think if you put the question like that and say it mildly, maybe not. But if you look at it in light of the circumstances, and we bring in all the circumstances that we know about, one-month-old child going to the city, March, it's cold. I'm presuming it's cold because it's March. It's far away given the location. Defendant doesn't live there. They have an off-and-on relationship. Who knows what that means for them. And then more importantly, I think Presiding Justice Jorgensen hit on this earlier, which is you don't really entirely know what he intends to do. I don't know that the victim is required to stand there and have a dialogue with him about it. I don't know that she's required to say no or whatever. I mean, the act was complete. He picked up his son. He said, I'm taking the baby to Chicago. They engage in what is on the record a brief confrontation about it. Where he's swiping at her with his free hand, indicating that he's holding the baby with his other hand. You agree that the proof has to show harassment. I believe that from the circumstances, one must be able to reasonably infer harassment from the situation, from the entire transaction. How big is now the entire transaction? I'm sorry. The entire transaction, given the language of the Unlawful Interference Statute, the entire transaction prior to the 911 call. Do you agree with this definition of harassment? Harassment means knowing conduct which is not necessary to accomplish a purpose, which is reasonable under the circumstances and would cause a reasonable person emotional distress. I have to agree with that because that's the statutory definition, yes. I think, but I think if you He has to know that his conduct of asking, picking up the baby, telling the wife that he wanted to take the baby to Chicago, would cause her emotional distress. Respectfully, Your Honor, I think you're parsing it a little bit. It's knowing conduct. I mean, he has to knowingly commit the particular act. I think that's, it's stated that way to distinguish it from accidental conduct. Well, the conduct is picking up the baby and telling the mother, I want to take the baby to the city. That's the conduct, right? Right, and I think the question is, did he do that knowingly? He couldn't, I mean, he couldn't, he didn't suffer in the apartment. Well, he wasn't asleep. Right, exactly. He wasn't drunk, so, I mean, I I believe that's why, I believe that's why the statute is purposefully broad. It's designed to apply to a myriad of situations. I think the more important question is, you know, was the, it's not just a, it's not just a unilateral approach. It's not just what the defendant did. It's what the defendant did and what was the victim's reaction. And was the victim's reaction reasonable? And was it reasonable under the circumstances? And was she distressed? And under these circumstances? I mean, it's not just that the defendant committed an unreasonable act. It's that the victim also has to have a reasonable reaction to it. Or, I'm sorry, at least her distress has to be reasonable. Well, the act has to be done knowingly. And knowingly means that it anticipates, the person would anticipate what was going to happen. Respectfully, Your Honor, that's, I mean, as you pointed out before, that sounds a bit more like intent. That's full intent of, you know, that he intends that she be distressed by this.  But it was an FBI definition of knowledge. It was a definition of the criminal code. That's the difference, though, between, like, for example, you know, I know that, I'm intending that some of my answers, you know, might be helpful. I know that in any given case they might not be for your particular question. You know, I mean, there's a difference. He went there that night. He knew what he was doing. Knowing conduct is knowing what you're doing. Intentional conduct is I intend to do it. I intend for it to have this particular effect. I mean, with full knowledge of the ramifications, full intent of the ramifications of it. I would submit to you that the legislature used the word knowledge there as opposed to intent because they clearly intended a lesser mental state. We're dealing, everything we've talked about this morning flows through the criminal statute and then into criminal procedure where we get our definitions. Why does this offense not require a predicate offense of domestic violence? I believe it does. But I mean that is actually charged and is known. He wasn't charged with harassment. Why does he not need to be charged with harassment since we're dealing with a criminal offense? I don't know that he... He's not being found guilty of harassment here. He was found guilty of interfering after an act of domestic violence, interfering with reporting of that. So why wasn't he charged with an act of domestic violence? And why doesn't this require a charge of domestic violence so that we're not pulling harassment of sorts out of the air? Or you're arguing he was talking loudly and Mr. Rogers was like, well, you know, why don't we do this? Respectfully, Your Honor, I mean the decision about what to charge and how to charge it, and I'm obviously at the appellate stage, so I wasn't there at the charging stage. I agree that we should charge every offense when it comes up, and I think maybe to some extent there would have been a domestic battery, domestic violence based on harassment charge that could be at hand here. But I don't think that that necessarily... Well, if we don't have a charge, how can we have an interference with reporting an offense of domestic violence or an act of domestic violence? I don't understand that. I guess the point is it's clear. Let's assume for a second that the act of domestic violence... Well, let's assume it's not clear to me because that's why I asked you the question. Okay. I'm assuming for a hypothetical reason trying to address your question. Let's assume that the act of domestic violence did clear the card, and let's assume that it's harassment for whatever reason. Just because the state hasn't independently charged an act of harassment doesn't mean that the defendant didn't unlawfully interfere with the report of that harassment. I mean, one comes before the unlawful interference. The other necessarily comes when she picks up the phone. When we hand them a complaint or an indictment or an information, isn't that piece of paper designed to tell them what they have done wrong? Yes, I believe so. And the defendant has every ability to file it. I mean, you sort of did indicate this before in your question of my opponent. It was what's he supposed to do when he gets the charges in this situation? It just says domestic violence in there. Is he supposed to look up the definition? Is he supposed to look at all six answers for abuse? Is he supposed to look at all the six definitions for domestic violence? And I think the correct thing for the defendant to do in those situations, I think the state should either be more definite or the defendant should file a bill of particulars. But the question of how the charge could have been better defined doesn't answer the issue of which defendant appealed on, the issue of whether or not the state presented sufficient evidence of trial. I mean, the charging instrument says domestic violence. Harassment is an act of domestic violence. The only question is did the state prove harassment? Let's assume that it did. Then let's move on to the question of whether or not the defendant interfered with the report of that act. Even the defendant doesn't challenge that. So, I mean, whether or not the state could have independently charged harassment doesn't shed any light on that. The judge doesn't require you to do that. No. Is that your point? Yeah. My point is that there's no requirement. And at this point, the issue is, the question is whether count one states cause of action. Yes. To be fair, I certainly understand your point, Justice Hutchinson. I just, you know, they're removed in space and time. Thank you. Thank you. Do you wish to reply? Yes. First of all, just to address the questions that Justice Hutchinson was asking, we do need to be clear here. This is not a challenge to the sufficiency of the charting instrument. And I would analogize this to the armed violence statute. That requires a predicate felony. The predicate felony has to be alleged within the armed violence charge itself. It doesn't have to be separately charged, but it's an element that has to be proved. I would say it's basically the same thing here. There has to be a predicate act of domestic violence in order for there to be the offense of interfering with a reporting of that act. But usually there is at the time the armed violence is filed, the armed robbery charge, the whatever charge. That may be true. I'm not, you know, I don't know whether empirically that's true, what the proportion of cases that's true or not. But the point is we are not challenging the sufficiency of the charting instrument. We're challenging the sufficiency of the evidence. All right, but then look at the definitions. And if you look at the definitions of domestic violence, as I read them, they all seem to include some element of physical activity. The intimidation, staring somebody down, physical abuse, it's defined by itself. That was the point of citing the statutory presumptions of harassment and to show that what Mr. Puckett did here doesn't come anywhere near that. Now, another thing to be clear about is that the complaint says he's charged with unlawful interference with reporting of domestic violence. And that after having committed the act of domestic violence, he pushed Kaylin Gales, prevented her from making this call. Now, there's really only two things that happened before the call. Or I guess maybe you could say three. That we know of from the record. That we know of from the record. Comes in, he says, I would like to take the baby or I'm going to take the baby to Chicago. Picks up the baby, and at some point he pushes her away. Now, that push seems to be what's charged in the complaint as being the act of domestic violence. The trial court, however, if you look at the pages that I mentioned before, does not find that the push constituted the act of domestic violence or the act of harassment. The trial court finds that that push, the one as opposed to the one when he's trying to get out the door, that that was essentially a reflex action. It was defensive. It was not, the trial court did not rely on that act as an act of harassment. And I think that this court has to defer to that as a finding of fact because that's, in fact, a reasonable inference from the evidence. What the trial court found is that, goes through the factual situation and then says, Do I think he, Mr. Puckett, should have then said, oh, I'm going to take the child anyway? Of course, there was no evidence that he ever said that. But again, quoting the court, he says, no. Do you have a right to do that? Maybe, maybe not. But he shouldn't have. And by saying that, I think it was harassing conduct. So what the trial court found to be the harassment here was the mere statement, I'm going to take my child to Chicago. Now, I think that the state is making the same mistake, essentially, that the trial court did, which is putting an illegitimate gloss on the evidence and talking about, oh, well, it was the whole situation. No, it wasn't. That's not what the trial court found. The trial court found it was the mere statement. In fact, if you look at the whole situation, all we know is that he came in, picked up the baby, and actually there was some evidence that he, that Ms. Gales gave him the baby. Page 35 and 36 in her testimony, she couldn't remember if she did that. He testifies, page 67, she gave me the baby. And then she made the call, and I had my free arm, and I kind of pushed her away. And that was that. And then when he realized, oh, she really is calling the police, unlike previous times when she had pretended to call the police, he puts the baby down and he starts to leave. So if you stop the video at the point where he says, I'm going to take the baby to Chicago, is that harassment? That's what the trial court found. I don't think that that falls within the definition set forth in the statute. And for those reasons and the others that I mentioned earlier, I would ask this court to reverse Mr. Cleffitt's conviction. I have one question. Yes. Is there any dispute for the record that the defendant actually pushed the mother during the California incident? I think when you describe it as a push, they use that term, and I think that's a term that has some flexibility in its application, as I said. What does the record show regarding the contact between the defendant and the mother? Well, that there was something that he did make contact with her. He pushed her aside. As I said, the trial court found that Mr. Puckett said he went off instinct, and the trial court, I think, essentially agreed with that by finding that it was a defensive reaction. So I think it's a reasonable inference that this was not a show. There's no evidence that she fell down, that she struck anything, that she had a bruise, that he had a closed fist, used a forearm, anything like that. He, you know, basically, I think it's reasonable to infer he kind of shooed her away and made some contact with her. It's unclear as to, you know, how significant that contact was. Again, that's not the contact that the trial court found to be harassment. Does the trial court have the right to make a finding of its own from the facts of the record in respect of what the trial court found? Does this court have that? Of course, yeah. This court has, in other words, if the record shows that there was harassment, domestic violence, and even though the clerk used some other basis, don't we have the right to make a finding on facts in the record? Well, as I said, I think this court has to defer to the prior facts, finding of facts, as long as they're based on the evidence or reasonable inferences from that. Now, is it a reasonable? The trial court found that it was the mere statement that counted harassment. The trial court also found, as a matter of fact, that the push was reflexive, not offensive, and so forth. So I think that's a finding of fact that this court has to honor. All right. Thank you very much. We'll be in recess in the next 15 minutes.